STATE OF MISSOURI at the relation of J. E. WOODMANSEE, BRUCE FORRESTER, EDGAR SHOOK and LEWIS ELLIS, as Members of and composing the BOARD OF ELECTION COMMISSIONERS for Kansas City and also as citizens and qualified and duly registered voters of the City of Kansas City, Relators, v. ALBERT A. RIDGE, Judge of the Circuit Court of Jackson County.—123 S. W. (2d) 20.

Court en Banc, December 20, 1938.

*Ben R. Estill, E. F. Halstead, Abraham E. Margolin, Samuel W. Sawyer, Leslie A. Welch* and *John S. Wright* for relators.

704

*James P. Aylward, Terence M. O'Brien* and *Ralph M. Russell* for respondent.

LEEDY, J.—This is an original proceeding in certiorari to review the record of the Circuit Court of Jackson County in a proceeding lately pending in that court entitled, "Alphie Nellie Matheson, Appellant, v. Board of Election Commissioners for Kansas City, Missouri, and J. E. Woodmansee, Bruce Forrester, Edgar Shook and Lewis Ellis, Members of and composing the Board of Election Commissioners for Kansas City, Missouri, Respondents." The appellant therein, Alphie Nellie Matheson, had appealed from the action of respondents (relators here), as the Board of Election Commissioners for Kansas City, denying an application made by her on March 8, 1938, to register as a qualified voter of the 8th precinct of the 13th ward of that city for the city election to be held March 29, 1938. The Board had denied her application for the reason that registration for that election had closed on the preceding Saturday, March 5. However, the Board offered to register her for succeeding elections, but not to be effective until after said city election. The court having indicated it would sustain the position of the appellant, withheld action until the Board could apply for prohibition. Application therefor was made to this court, and denied, following which the circuit court ordered that the Board "'permit and effect (registration of applicant) in time for the city election to be held on March 29, 1938." It is the record thus made which relators seek to have reviewed and quashed by this proceeding in certiorari.

The ultimate question for decision is one of statutory construction, i. e., the interpretation and effect to be given certain provisions of a statute passed by the 59th General Assembly enacting into law a scheme for the permanent registration of voters in cities of 300,000 to 700,000 inhabitants—an act not hitherto construed by this or any other appellate court. [Laws, 1937, pp. 294-341.] It is the contention of relators that the close-of-registration provisions of that statute are mandatory in character; that they operate as a limitation or restriction upon the power and authority of the board, and in consequence thereof, upon the circuit court on appeal, so as to render it without jurisdiction to grant the relief ordered.

The several sections relating to close-of-registration will be briefly noticed. Section 22 says flatly, "Registration for any election shall be closed at the close of office hours on the fourth Saturday prior to the day of the election." Section 24, relating to the form of affidavits of registration, also provides, "The wording of the affidavits of

registration, and the applications for registration hereinafter provided for, *for registrations made between the close of a registration for an election and the day of said election,* shall be changed by striking through the words, 'the day of the next succeeding election' and inserting the date of the election for which registration applies, *and such registration affidavits shall not be filed in the precinct registers until following the date of the next succeeding election."* (Italics ours.) Section 26 says, "Only such persons as shall be duly qualified to vote within the city at the next succeeding election and who shall personally apply for registration shall be registered. *Any person who may be qualified to vote at an election following the next succeeding election may be registered after the close of registration for the said next succeeding election, but the registration shall not be effective until after the next succeeding election."* (Italics ours.) Section 16 makes it the duty of the board "to give ten days' notice in two daily newspapers of such city, of opposite politics if possible, of the time and place of election in each precinct of the city, *of the date of the close of registration. . . ."* (Italics ours.) Section 18 provides that a citizen "shall not vote elsewhere than in the precinct where his name is registered, and whereof he is registered as a resident," and Section 46 expressly declares, "The vote of no one shall be received by said judges whose name does not appear upon said register as a qualified voter."

On the other hand, it is contended that under Article VI, Section 23, Constitution of Missouri, the circuit court is vested with superintending control over inferior tribunals, such as the Board of Election Commissioners, and that Section 35 of the act in question expressly confers jurisdiction on the circuit court to hear and determine the appeal of "any person who has been denied registration." And so it is argued that "having jurisdiction, respondent had power to decide the issue correctly or incorrectly," and that relators complaint respecting the action of the circuit court goes to its correctness and not to the power and jurisdiction of the court to make it.

Preliminary to a discussion of the merits, it is necessary to determine the contention, forecast by the last paragraph, that certiorari does not lie. It is insisted certiorari reviews only jurisdictional questions, not the merits, and that respondent had jurisdiction. Furthermore, that even if certiorari reviews the merits where there is no remedy by appeal or writ of error, it does not lie here because a remedy by appeal and writ of error exists. Treating the latter proposition first, it may be said that it is based upon a construction of Section 35, supra, relating to appeals from the Board of Election Commissioners to the circuit court. That section, insofar as here

pertinent, provides as follows: "Any person who has been denied registration . . . may appeal to the Circuit Clerk of the County. The Circuit Clerk shall make a record of the appeal of such person, which shall set forth the grounds of the appeal, and the Circuit Clerk shall request the Board of Election Commissioners to file with him the application for registration, . . . together with the reasons for denial of registration. . . . It shall be the duty of the Board to transmit such information forthwith. All records bearing upon such appeal shall be presented to one of the judges of the Circuit Court *and his ruling and findings shall be final.*" We do not construe the italicized language as meaning that the "ruling and findings" shall be in the nature of a final judgment, and, therefore, reviewable, by appeal or error, as in ordinary civil cases. Rather, we think, from the language itself, that the contrary is true: It shall be final—conclusive—in the sense that it is non-appealable, and not reviewable by writ of error.

■ Adverting to the other contention, it is said that under the present rule, as laid down in State ex rel. Kennedy v. Remmers, 340 Mo. 126, 101 S. W. (2d) 70; State ex rel. Miller v. O'Malley, 342 Mo. 641, 117 S. W. (2d) 319; State ex rel. Brenner v. Trimble, 326 Mo. 702, 32 S. W. (2d) 760, the scope of certiorari is strictly limited and reaches only questions of jurisdiction, thereby overruling that line of cases holding certiorari lies to review other than jurisdictional questions if there is no remedy by appeal or writ of error. [State ex rel. v. Moehlenkamp, 133 Mo. 134, 34 S. W. 468; State ex rel. v. Shelton, 154 Mo. 670, 55 S. W. 1008; State ex rel. Iba v. Mosman, 231 Mo. 474, 133 S. W. 38 (banc); State ex rel. Summerson v. Goodrich, 257 Mo. 40, 165 S. W. 707; State ex rel. Lunsford v. Landon, 304 Mo. 654, 265 S. W. 529 (banc); State ex rel. Gentry v. Westhues, 315 Mo. 672, 286 S. W. 396 (banc); State ex rel. Porter v. Falkenhainer, 317 Mo. 707, 296 S. W. 386 (banc); State ex rel. Barlow v. Holtcamp, 322 Mo. 258, 14 S. W. (2d) 646; 4 Houts, Missouri Pleading and Practice, secs. 1394-1397.] First, it should be noted that State ex rel. Kennedy v. Remmers, supra, was a divisional opinion and, therefore, could not have had the effect of overruling prior decisions of the court en banc. The precise language of that case which gives rise to the present contention is as follows: "Under the common-law rule the scope of the review by certiorari is never extended to the merits. The action of the inferior body is final and conclusive on every question except jurisdiction or power. . . .

■ While in some jurisdictions the rule has been modified by statute, in this State 'This writ, under constitutional provisions, is strictly the common-law writ of that name; it only brings up the record, and can only reach errors or defects which appear on the face of the

record of the tribunal to which it is issued, *and which are jurisdictional in their nature.*' '' (Emphasis ours.) The above inner quotation also appears in State ex rel. v. Smith, 176 Mo. 90, 75 S. W. 586, and from a reading of that case, it is manifest that in meaning the qualifying phrase ''which are jurisdictional in their nature'' (as used in reference to errors or defects appearing on the face of the record) extends to, and comprehends cases where the court has jurisdiction, but undertakes to exercise unauthorized powers. In that connection, this was said in the Smith case, supra: ''This writ (certiorari) may be resorted to, not only in cases where it is alleged that the lower court is absolutely without any jursidiction whatever, but it may also reach and afford remedy in cases where such court has jurisdiction, but undertakes to exercise unauthorized powers. This principle was very clearly announced by Judge BLACK in State ex rel. Dawson v. St. Louis Court of Appeals, 99 Mo. 216, l. c. 221, where it is said, 'But it cannot be said that the writ will be issued only in those cases where the lower court has no jurisdiction whatever of the case before it. High says: ''The province of the writ is not necessarily confined to cases where the subordinate court is absolutely devoid of jurisdiction, but is also extended to cases where such tribunal, although rightfully entertaining jurisdiction of the subject-matter in controversy, has exceeded its legitimate powers.'' ' There is but one question involved in this proceeding. That is, does the record before us disclose that the Kansas City Court of Appeals, in the disposition of relator's case, pending before it upon appeal, exceeded its legitimate powers; or in other words, did the Court of Appeals assume to exercise original and not appellate jurisdiction of the cause, and if so, was it such an exercise of unauthorized power as this court will, upon certiorari, correct and remedy?'' We think the Remmers and O'Malley cases, supra, in harmony with this view in that they hold that ''the action of the inferior body is final and conclusive on every question except jurisdiction *or power*.'' (Emphasis ours.) ▇ What was said in State ex rel. Brenner v. Trimble, supra, that ''The writ of certiorari  .  .  . reaches only questions of jurisdiction'' is a quotation from State ex rel. v. Bland, 168 Mo. 1, 67 S. W. 580. But the statement must be considered in the light of its own setting. There the court was being asked to proceed to determine a controversy on its merits, if it should be held that the Court of Appeals, whose record was under·review by certiorari, was without jurisdiction. The case is not authority for the contention.

Furthermore, if, as has been held, jurisdiction includes not only the power to hear and determine, ''but power to render the particular judgment in the particular case (Charles v. White, 214 Mo.

187, 112 S. W. 545; State ex rel. v. Bright, 224 Mo. 514, 123 S. W. 1057)'' and if the close-of-registration provisions of the statute *sub judice* are mandatory, then this case falls within the letter of the rule as contended for. So that in either view, it must be held that certiorari is the proper remedy.

This brings us to a consideration of whether the close-of-registration provisions of the statute are mandatory. In State ex rel. v. Brown, No. 30,665, 326 Mo. 627, 33 S. W. (2d) 104, and a companion cause of the same title, but numbered No. 30,666, 326 Mo. 637, 33 S. W. (2d) 109, certain provisions of the former registration statute applicable to cities of the size of Kansas City (Laws 1921, secs. 29, 30, pp. 350-351, as amended by Laws 1921 (2nd Ex. Sess.), secs. 5, 6, p. 29) were held to be merely directory. Respondent cites said cases in support of his position. We are in accord with, and reaffirm the principles governing the decision of those cases, but we do not find them to be controlling authority here because of the wholly dissimilar features of the statutes construed then and now. There the holding, in large part, at least, was based upon the proposition that the act did not prescribe the consequences of not obeying the provisions under scrutiny, particularly in the light of the meager provision respecting close-of-registration. It would seem that the present act was so framed as to obviate the defects which resulted in the former provisions being construed as directory, because, in addition to the express declaration of Section 22 that ''Registration for any election *shall* be closed at the close of office hours on the fourth Saturday prior to the day of the election,'' by other sections, the consequence of a failure to register before that time is prescribed; that is, Section 24 provides that in registrations made between the close of registration for an election and the day of election ''such registration affidavits shall not be filed in the precinct registers until following the date of the next succeeding election.'' Similarly, Section 26 limits the effective date of a registration made after the close of a registration for an election. Upon a consideration of the whole act, and the purpose to be served by closing registration, as indicated by the several duties and processes particularly outlined and required by Sections 27, 28, 29, 31, 32 and 33, together with the provisions hereinabove more fully set forth, we are constrained to hold the close-of-registration provisions mandatory. This being true, the action of the circuit court in the premises was beyond its powers, and its record is, accordingly, quashed. All concur.