In the Matter of the TARKIO–SQUAW LEVEE DISTRICT OF HOLT COUNTY, Missouri.

STATE of Missouri at the Relation of TARKIO–SQUAW LEVEE DISTRICT OF HOLT COUNTY, Missouri, Relator,

v.

Emmett J. CROUSE, Judge, Respondent.

Nos. 46969, 47026.

Supreme Court of Missouri,

En Banc.

Jan. 12, 1959.

J. R. Eiser, Oregon, John C. Landis, III, St. Joseph, for appellant and relator.

Clayton Allen, Rock Port, Watkins & Watkins, by O. W. Watkins, Jr., Fred H. Maughmer, St. Joseph, for respondent.

W. T. Bellamy, W. T. Bellamy, Jr., Marshall, David R. Clevenger, Platte City, John B. Gage, Kansas City, Arthur R. Kincaid, Liberty, Charles A. Orr, Arthur B. Taylor, Independence, Robert B. Fizzell, Robert B. Fizzell, Jr., Norman E. Gaar, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Edward L. Scheufler, U. S. Atty., Kansas City, J. Whitfield Moody, Asst. U. S. Atty., amici curiae.

WESTHUES, Judge.

Prior to 1957, the Tarkio-Squaw Levee District of Holt County, Missouri, was organized and incorporated under the provisions of Chapter 245, RSMo 1949, V.A.M.S. Commissioners were appointed to determine the amount of benefits and the damages to be assessed. The Commissioners filed their report on September 6, 1957. In this report, the Commissioners estimated the cost to the Levee District as $1,884,300 and assessed benefits in the amount of $6,046,205.90. It was agreed by the parties that the United States Government had undertaken to aid in the construction of the levees and was contributing $15,300,000.

In March, 1958, a hearing was had in the Circuit Court of Holt County on exceptions filed under the authority of Sec. 245.130, RSMo 1949, V.A.M.S. (Unless otherwise indicated, all statutory references appearing hereafter are to RSMo 1949, V.A.M.S.) A motion was also filed to amend the report of the Commissioners so as to include as cost to the Levee District the $15,300,000 which the Federal Government was to expend in the construction of the levees. In this motion, the court was asked to dissolve the Levee District. Emmett J. Crouse, Circuit Judge of Buchanan County, Missouri, heard the case as special judge.

The trial judge sustained the motion to dissolve and held that the costs to the district far exceeded the benefits and, pursuant to Sec. 245.135, dissolved the Levee District.

An appeal was taken from the judgment by the Levee District. That case is No. 46969. The Levee District also instituted in this court certiorari proceedings asking that the judgment of the Circuit Court dissolving the Levee District be quashed and for naught held. This certiorari case is No. 47026. The cases were consolidated by order of this court and as such were argued at our September, 1958, Session.

This court granted permission for the filing of briefs as amici curiae by a number of levee districts who claimed they were aggrieved by the judgment dissolving the Tarkio-Squaw Levee District. Those parties filed an elaborate brief. The United States, by and through its attorney, also filed a brief as amicus curiae wherein it is contended that the judgment of the trial court should be set aside.

The respondent, in the brief filed in this court, has presented six main and a number of subordinate points in support of the judgment of the trial court. We shall state the six main points or contentions but not in the order as treated in the brief. The contentions are: 1. That there is no provision in the statutes giving the Levee District the right of appeal. 2. That certiorari is not a proper remedy because the action of the trial court dissolving the Levee District was not a judicial action and that certiorari can be used to review judicial actions only. 3. That the Levee District is not a proper party to this proceeding. 4. That the Board of Supervisors of the Levee District does not possess the authority to enter into a contract with the Federal authorities and therefore the entire cost, including the $15,300,000, will be an obligation of the Levee District. 5. That the cost of construction means the total cost regardless by whom paid and the $15,300,000 to be expended by the Federal Government must be included and therefore under Sec. 245.135, supra, the

Levee District must be dissolved. 6. That the procedure followed in the trial court, that is, the filing of a motion to amend the report of the Commissioners and to dissolve the Levee District, was proper.

We shall answer each contention briefly and then consider at length those questions necessary for a determination of the case on the merits.

■ In the case of In re Yellow Creek Drainage District of Chariton County, Mo., 240 S.W. 203, it was held that no appeal lies from an order dissolving a drainage district. We are asked by the Levee District to re-examine the question and overrule cases so holding. However, we have decided not to undertake that task in this case and without further comment, we are following the ruling in the Yellow Creek Drainage District case, supra, and deny the appeal.

■ As to the question mentioned next, we are holding that certiorari is a proper remedy to review the question now before us, that is, we shall determine whether the record as made in the trial court discloses that the court exercised power beyond its authority in dissolving the Levee District. We shall treat this question later in this opinion.

■ As to the third question, we are holding that a levee district is a proper party and may by certiorari quash a judgment when it appears upon the record that the dissolving order is clearly erroneous and beyond the authority of the court to enter.

■ Our answer to question four is that the Board of Supervisors of the Levee District in question does possess the power and authority to enter into a contract with the Federal Government authorities in relation to the construction of the levees in the Levee District. Of this, more will be said later on in this opinion.

It is our opinion that in answer to question five, that is, determining the amount of the estimated "costs of works and improvements" mentioned in Sec. 245.135, supra, only those items should be taken into account which must be paid by the landowners as taxes assessed and levied pursuant to 245.180.

The Levee District claims that there is no provision in Chapter 245, supra, authorizing the filing of a motion as was done in this case. Respondent says such a procedure was agreed upon by the parties in the trial court. Without deciding the question as to the proper procedure, we shall consider the case as here for determination on the merits. That is all we shall say in answer to point six above-mentioned.

■ Our conclusion that certiorari is a proper remedy to review the record in this case is supported by good authority. The judgment entered dissolving the Levee District in question contains the following finding: "The Court finds that the said Commissioners' report should be and is hereby amended to include the costs of the works and improvements to be provided by the agencies of the United States Government." The action of the court in so ruling was a judicial and not a legislative act. It is purely a question of law whether the amount provided by the Federal Government should be included in determining the question of whether the costs exceeded the benefits under the provisions of Sec. 245.135, supra; 50 C.J.S. Judicial, p. 560, "Legislative" and cases there cited. See also State ex rel. Gentry v. Westhues, 315 Mo. 672, 286 S.W. 396, loc.cit. 398(1–3); Birmingham Drainage District v. Chicago, B. & Q. R. Co., 274 Mo. 140, 202 S.W. 404, loc.cit. 406(2, 3); State ex rel. Iba v. Mosman, 231 Mo. 474, 133 S.W. 38, loc.cit. 41(1); State ex rel. Woodmansee v. Ridge, 343 Mo. 702, 123 S.W.2d 20, loc.cit. 22, 23(2–4), (5).

In State ex rel. Iba v. Mosman, supra, this court en banc ruled that certiorari was a proper remedy to review error appearing on the face of the record where the question could not be reached by

appeal. In State ex rel. Woodmansee v. Ridge, supra, this court en banc ruled that certiorari will lie to correct defects appearing on the face of a record where the lower court has jurisdiction of the subject matter but undertakes to exercise unauthorized powers. Certiorari is therefore the proper remedy to review the question before us.

As to the third contention made by respondent, that the Levee District is not a proper party to this proceeding, it would seem that a party who has been condemned to be beheaded at the guillotine is the most interested party in the case. It is difficult to reason that the Levee District in question was not aggrieved by the judgment which ended its existence. Respondent cites the case of Birmingham Drainage District v. Chicago, B. & Q. R. Co., supra, as holding that the Levee District has no interest in this case. In the Birmingham case, the dispute was over the amount of benefits and damages to be assessed. The court said, 202 S.W. loc. cit. 409: "It seems absurd to say, as intimated by the plaintiffs in error, that the corporation formed by the tentative decree should become the representative of either group of contestants in a proceeding in this court to reverse or modify the decree which fixed their rights as between themselves." We do not have such a situation before us in this case. The motion to dissolve the Levee District was based on a theory that the $15,300,000 donated by the Federal Government should be included as costs to the Levee District. The motion was leveled directly against the Levee District. We rule that the Levee District had the legal right to defend itself and in our opinion it had the legal right to question the decree which terminated its existence.

In the fourth contention, as above-noted, respondent questioned the authority of the Levee District, through its Board of Supervisors, to enter into contracts with the Federal agencies and to cooperate with them in the construction of levees and other improvements necessary to complete the project in question. We find that the Federal Government has authorized its agencies to cooperate with state agencies such as the Levee District for the purpose of giving financial aid in flood control projects. Public Law 534 of 78th Congress, Dec. 22, 1944, 58 U. S. Statutes At Large (Part I) 887–892.

We further find that our State Legislature has clothed levee districts with authority to enter into contracts with the Federal agencies to do certain things in return for receiving assistance in flood control projects. Note Sec. 245.150 which reads in part as follows: " * * * provided, however, that if and when the state of Missouri or the United States of America or any subdivision, department, division or agency thereof is willing to construct the works and improvements provided for in the plan for reclamation or any part thereof, the board of supervisors of said district is authorized to cooperate with such agency to the fullest extent and is hereby granted power and authority to accept any such work in aid of the project, irrespective of whether it be by way of grant of funds, labor, work, materials or otherwise and may, in the discretion of the board of supervisors, give such assurances as may be required to obtain the construction of the works and improvements provided for in the plan for reclamation." There is ample authority for the Levee District in question to contract and to cooperate with the Federal agencies for the acceptance of the $15,300,000 in return for the Levee District's assurance to maintain the levees to be constructed.

Respondent, in the brief, says that "The only authority in the levee district laws for the execution of the so-called contract of assurance is in R.S.Mo. 1949, Sec. 245.150, which is an amendment to R.S.Mo. 1939, Sec. 12510. The amendment is unconstitutional in that the title makes no mention of the purported grant of authority." The constitutional provision

relied on is Sec. 23 of Article III, 1945 Constitution. It reads, in part: "No bill shall contain more than one subject which shall be clearly expressed in its title, * * *." As stated by respondent, Sec. 12510, RSMo 1939, which is now Sec. 245.150, was amended in 1947 (Laws 1947, Vol. II, p. 226) so as to authorize the levee districts to cooperate with the Federal Government is securing aid in constructing reclamation projects. The amendment was germane to the subject matter contained in the title to the original act authorizing the organization of levee districts which was "An Act providing for the organization of levee districts by the owners in any contiguous body of land situate in one or more counties in this state and bordering on, situate near or subject to overflow by the rivers of this state, to prevent and to protect such lands from such overflows." Laws 1887, p. 208. When a statute is amended, it is sufficient to refer to the title of the original act. This court en banc so held in Inter-City Fire Protection District of Jackson County v. Gambrell, 360 Mo. 924, 231 S.W.2d 193, loc.cit. 199 (6-9). We rule that the title of the amending act gave ample notice that Section 12510 of the Levee District Act was to be repealed and a new section on the same subject matter was to take its place. That was sufficient. State ex rel. Taylor v. Wade, 360 Mo. 895, 231 S.W.2d 179, loc. cit. 183(11, 12). We rule the point against respondent.

■ We now reach the final question, that is, whether in determining the costs mentioned in Sec. 245.135, supra, the amount donated by the Federal Government, in this case $15,300,000, should be included. That section provides that "If * * *, the court shall find that the esti-mated *costs* of works and improvements as reported by the board of commissioners, or as amended by the court, exceed the estimated benefits, the court shall then ren-der its decree" dissolving the district. (Em-phasis supplied) It is our opinion that the

-$15,300,000 should not be included. A circuit court has the authority to amend the report of the commissioners in such cases either by adding to or subtracting from the amounts of damages or bene-fits as reported by the commissioners. This may be done if on the hearing of excep-tions to the report of the commissioners, as provided in Sec. 245.130, supra, the items of damages or benefits as to amounts as reported by the commissioners are chang-ed. If after the amendments are made, the costs exceed the benefits, the court en-ters an order dissolving the district as provided by Sec. 245.135, supra. If the costs do not exceed the benefits, then the board of supervisors, under authority of Sec. 245.180, must "levy a tax of such portion of said benefits," on the property benefited, "to pay the cost of the comple-tion of the proposed works and improve-ments." The $15,300,000 to be expended by the Federal Government as aid in the building of the improvements cannot be considered as a part of the costs as mentioned in either Sec. 245.135 or Sec. 245.180, supra. What is contemplated by those sections is that the property benefited shall be assessed for the costs of the im-provements. The supervisors of the Levee District certainly would not have the au-thority to levy a tax for the purpose of re-imbursing the Federal Government for the amount of financial aid to make the im-provements possible. A case somewhat similar to the one before us was presented to the Court of Appeals of Ohio in Mus-kingum Watershed Conservancy District v. Clow, 57 Ohio App. 132, 12 N.E.2d 419. The Ohio court there said, 12 N.E.2d loc.cit. 421 (2-4): "It would follow that if the evidence should show, as a matter of fact, that the benefits appraised are less than the total cost, it would be necessary either to disorganize the district or to order a revision of the official plan. The record before us shows that the estimated bene-fits appraised are approximately $13,000,-000. The estimated costs to the Muskingum Watershed Conservancy District, as such,

will not exceed seven million dollars. This seems to us to answer the question so as to determine as a fact the proposition that the benefits do exceed the cost. Additional millions have been, and will be, contributed by the federal government and by the state of Ohio, sufficient to take care of the additional cost of the improvement, but the district is not responsible for these items. So far as the district is concerned, it seems to us that the answer is clear. This observation is made in view of the filing of the motions by the conservancy district, and in view of one of the objections made by various and sundry of the appellants." It will be noted that the Ohio court disposes of the question in short order.

The levees of the Levee District in question and the improvements to be made with the aid of the Federal Government are a part and parcel of a vast project which includes a flood control plan embracing the entire watershed of the Missouri River and includes parts of the states of Missouri, Kansas, Iowa, Nebraska, Montana, North Dakota, South Dakota, Wyoming, and Colorado. It is often referred to as the "Pick-Sloan Plan for Missouri River Basin." See House Document No. 475, 78th Congress, 2nd Session; Public Law 534, Dec. 22, 1944, 78th Congress, U. S. Statutes At Large, Vol. 58, Part I, pp. 887–897; "The Development and Control of the Missouri River," Office of the Division Engineer, Missouri River Division, Omaha, Nebraska, December, 1947.

It is our opinion that the Circuit Court did not have the authority to amend the report of the commissioners so as to include as cost the sum which the Federal Government was to expend on the improvements in question. It is, therefore, ordered that the judgment of the Circuit Court of Holt County entered herein dissolving the Tarkio-Squaw Levee District is hereby quashed and for naught held.

It is so ordered.

All concur.